UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Erica Herring Ross, ) | Civil Action No.: 4:22-cv-00145-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | ORDER |
| Kilolo Kijakazi, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits(DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

**A.     Procedural History**

Plaintiff filed an application for DIB on April 30, 2018, alleging inability to work since February 9, 2018. (Tr. 14). Her claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held in May 2021, at which time Plaintiff and a vocational expert (VE) testified. The Administrative Law Judge (ALJ) issued an unfavorable decision on June 16, 2021, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 14-25). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied on November 15, 2021, making the ALJ's decision the Commissioner's final decision. (Tr.1-3). Plaintiff filed an action in this

court in January 2022. (ECF No. 1).

**B.     Plaintiff's Background**

Plaintiff was born on June 1, 1971, and was forty-six years old on the alleged onset date. (Tr. 24). Plaintiff had at least a high school education and past relevant work experience as a bookkeeper and financial institute manager. (Tr. 23). Plaintiff alleges disability originally due to stroke, irregular heart beat, hypertension, blood disorder that causes clotting, and depression. (Tr. 57). Pertinent medical records will be discussed under the relevant issue headings.

**C.     The ALJ's Decision**

In the decision of June 16, 2021, the ALJ made the following findings of fact and conclusions of law (Tr. 14-25):

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2021.

2. The claimant has not engaged in substantial gainful activity since February 9, 2018, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: post cerebral vascular accident residuals and neurocognitive disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally balance, stoop, and climb of ramps and stairs, but never kneel, crouch, crawl, or climb ladders rope or scaffolds. She must avoid all exposure to dangerous machinery and heights. She can never perform work requiring more than occasional short communications with the public. The claimant is further limited to occupations requiring no more than simple routine repetitive task, not performed in a fastpaced production environment, involving only simple work related instructions and decisions, and requiring relatively few work place changes. The claimant will be able to

        maintain concentration persistence and pace for 2-hour increments.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on June 1, 1971 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 9, 2018, through the date of this decision (20 CFR 404.1520(g)).

## II. DISCUSSION

Plaintiff argues the ALJ erred in finding depression as a non-severe impairment.[1] Plaintiff argues the ALJ erred in the subjective symptom evaluation. Plaintiff argues the ALJ erred in not finding Plaintiff disabled based on VE testimony; however, the relevant issue argued is whether the ALJ's RFC should have included a limitation of 20 percent off task per workday and absent three days of work per month. The Commissioner argues that the ALJ's decision is supported by substantial evidence.

**A.     LEGAL FRAMEWORK**

    **1.     The Commissioner's Determination–of–Disability Process**

---

[1] Plaintiff's brief's headings reference migraines; this appears to be a typographical error. Migraines are not at issue.

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

4

considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

2. **The Court's Standard of Review**

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the

claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

B.    **ANALYSIS**

**Depression**

Plaintiff argues the ALJ erred in finding depression as a non-severe impairment.

A severe impairment is defined by the regulations as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Plaintiff bears the burden of demonstrating that she has a severe impairment.

*See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). However, "'[a]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir.1984) (*quoting Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir.1984)). The severe impairment inquiry "is a de minimis screening device to dispose of groundless claims." *McCrea v. Comm'r*, 370 F.3d 357, 360 (3rd Cir. 2004) (citation omitted). A finding of a single severe impairment at step two of the sequential evaluation is enough to ensure that the factfinder will progress to step three. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir.2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

Plaintiff misquotes the ALJ's statement containing a typographical error and argues the ALJ said there was no evidence depression was treated, citing page 17 of the ALJ's opinion. (ECF No. 12 at 5). The ALJ's typographical error in context is:

> ...hypertension is controlled generally with medications, as is her depression (Ex. 15F/23, 24). **There is no evidence of The claimant's depression is monitored and treated by her primary care physician without need for psychiatric counseling or hospitalization (Testimony).** Physicians treat these impairments conservatively and nothing in the record indicates these impairments cause significant functional limitations in the claimant's ability to perform basic work activities. Thus, these impairments are non-severe. Because the claimant has another mental impairment that is severe, the undersigned sees no benefit to separately assessing the "B criteria" for her non-severe depression.

(Tr. 17)(errors in original)(emphasis added). Based on capitalization and a logical reading of the statements by viewing the records cited by the ALJ, the remainder of the sentence "There is no evidence of" is missing and a different sentence begins anew: "The claimant's depression is monitored and

treated...". The ALJ cited Plaintiff's testimony as support. The ALJ gave several reasons supporting the non-severe finding. Plaintiff testified medications helped her depression, she did not see a counselor, and she had never been hospitalized for depression. (Tr. 41). Plaintiff testified she was able to comprehend and read a full 300-page book in a day. (Tr. 46). As to depression being controlled by medication, the ALJ also cited to April 2019 notes at Palmetto Family Medical(Ex. 15F/23-24). Those notes state Plaintiff felt like her depression was under good control after a Zoloft increase. Plaintiff stated crying started after one of her strokes and she is not actually sad when she cries. (Tr. 643-644). Upon exam, depression was improved. Amitriptyline was added to help with crying.

Carrying a diagnosis or an assessment of depression is not enough to prove disability. *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). Where impairments can be controlled with medication, they are not disabling. *Id.* Plaintiff herself testified and her medical records support her testimony that depression is generally controlled with medication. The ALJ supported the non-severe finding with substantial evidence. Plaintiff does not allege any functional limitations related to the medication controlled depression. In the RFC and SSE discussions, the ALJ references Plaintiff's reports of taking depression medications which help and that Plaintiff does not see a counselor and has not been hospitalized for depression. (Tr. 19). The ALJ considered Dr. Ritterspach's exam and opinion that were before Plaintiff started taking medication. (Tr. 20-21). The ALJ later compared the opinion to Plaintiff's testimony of improvement and control on medication. (Tr. 23).

Further, the ALJ's discussion and analysis, as a whole, is sufficient to demonstrate that she considered the Plaintiff's impairments in combination and is sufficient for the court to properly review the ALJ's conclusion on this issue. *See Thornsberry v. Astrue*, 2010 WL 146483, *5 (D.S.C. Jan. 12, 2010) and *Brown v. Astrue*, 2012 WL 3716792, *6 (D.S.C. Aug. 28, 2012). The ALJ sufficiently

addressed Plaintiff's combined impairments under the *Walker* standard[4] and there is substantial evidence to support the ALJ's decision in this regard.

**Subjective Symptom Evaluation**

Plaintiff argues the ALJ erred in the subjective symptom evaluation.

SSR 16-3p sets out "the process ALJs use to evaluate the intensity and persistence of a claimant's symptoms and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the record." *Id.*(internal citations and quotations omitted). Under *Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the fact-finder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to evaluate the intensity and persistence of symptoms to determine how symptoms limit capacity for work. *See also* 20 C.F.R. § 404.1529; SSR16-3p, *4.

The ALJ may choose to reject a claimant's testimony regarding his condition, but the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). A claimant's allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]" *Craig*, 76 F.3d at 595. The ALJ considers the

---

[4] *Walker v. Bowen*, 889 F.2d 47 (4th Cir. 1989).

evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See id.*; *see* SSR 16-3p, at *4.

A claimant's statements about intensity, persistence, and limiting effects of symptoms, which are inconsistent with the objective medical evidence and other evidence, are less likely to reduce her capacity to perform work related activities. SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). An individual's symptoms are evaluated based on consideration of objective medical evidence, an individual's statements directly to the Administration, or to medical sources or other sources, and the following factors:

> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). The ALJ at step three is to "consider the individual's symptoms when determining his or her residual functional capacity and the extent to which the individual's impairment-related symptoms are consistent with the evidence in the record." SSR 16-3p, at *11.

Plaintiff argues the ALJ never made "an assessment of Plaintiff's credibility." (ECF No. 12 at 8). The ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of symptoms were not entirely consistent with the evidence of record for the reasons explained. (Tr. 20). This is a SSR16-3p finding. Plaintiff block quotes *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83

(4th Cir. 2020) extensively stating it is "directly applicable." (ECF No. 12 at 8-10). However, *Arakas* focused on the standard for evaluating fibromyalgia(FM), an impairment that tends to elude objective evidence and a presentation of which is almost entirely subjective. This case does not present an issue about an elusive disease with no objective medical evidence. *See Hayes v. Comm'r*, No. 2:20-CV-03033-BHH-MGB, 2022 WL 1057179, *11 (D.S.C. Jan. 27, 2022). Plaintiff does not have fibromyalgia. Plaintiff has had two strokes and alleges she has weakness, memory, and speech problems; there are extensive tests and exams for determining functional limitations resulting from impairments of this type.

The ALJ here made a substantial review of the evidence in considering Plaintiff's allegations and the evidence. The ALJ considered Plaintiff's testimony:

> She does not have a driver's license due to a DUI in October 2019. She claims she is disabled due to effects of her stroke. She has left sided weakness in her left leg and she cannot remember things. She has pain all over, particularly her legs. Her speech is also affected. She takes blood pressure medications and it runs normal. She also takes depression medications, which help. She does not see a counselor and no history of hospitalization for depression. She can sit, stand and /or walk for 30 minutes and lift/carry 5 pounds. She cannot stoop, crouch or crawl, and cannot kneel with her left knee. She can wash dishes, vacuum, mop and sweep, but does not do laundry or grocery shop. She can manage her self-care. She does things with family outside the home like go to church and go out to eat. Reading fiction is a hobby. She is able to comprehend what she reads.

(Tr. 19-20).

The ALJ considered Plaintiff's records of strokes. (Tr. 20). Plaintiff had a stroke in 2017 and a stroke in March 2018. Plaintiff returned to work one week after the 2017 stroke. (Tr. 20). An MRI confirmed the strokes. After the second stroke, hospitalization records showed slowed speech, intact, memory, intact attention, no focal deficits, 5/5 strength, no tremors, intact sensation, and intact reflexes. (Tr. 20). The ALJ noted that primary care stated no therapy was required after being in the hospital

because Plaintiff did not have any problems with weakness. (Tr. 20). During the March 2018 hospitalization, a loop recorder was implanted to monitor long term arrhythmias; through May 2018, there were no episodes. Plaintiff then failed to follow up about the recorder for over a year. (Tr. 20). The ALJ then summarized Dr. Jones' July 2018 exam, noting Plaintiff smelled of alcohol and varied speech findings appeared suspicious:

> On July 30, 2018, the claimant underwent a Comprehensive Neurological Evaluation with June Bartell Jones, MD. She attended the examination alone and reported an ability to perform activities of daily living without difficulty with her arms and legs. Her speech was slow and it took her several seconds to get out a specific word. She was tearful. Although she reported the only medication she had not taken was her Zoloft, the pharmacist [stated] claimant had not filled any of her medications in months including her anticoagulants and Plavix. The examination found the claimant's breath[] smelt of sour alcohol despite her stating she quit drinking in March 2018. She stated she felt unbalanced on her toes, but her gait was smooth, Romberg testing was negative, and she was able to heel and toe walk. Her speech was hesitant and slow. She admitted to having problems finding words, but no difficulty speaking them. Sensory testing was inconsistent as the claimant stated she felt a smooth sensation but jerked her foot back as though it was a painful sensation. Muscle strength was 4/5 on the right and 3/5 on the left upper extremities. The examiner noticed the claimant was able to speak the numbers without any hesitancy and rather quickly. It appeared to the examiner that she realized she was speaking faster than she had spoken and her last two calculations, she spoke them slowly with some hesitancy. Dr. Jones opined it looked suspicious that her speech may not be as interrupted, and she claims it is. (Ex. 5F).

(Tr. 20). The ALJ summarized Dr. Ritterspach's consultative exam which was the next day after Dr. Jones' exam. Dr. Ritterspach noted stilted/slowed speech, average intellectual abilities, and apparent memory and communication problems. Dr. Ritterspach opined Plaintiff was able to complete activities of daily living, could interact with coworkers and supervisors but was not suited for work with the public and opined the pace of task completion would be "significantly impaired due to cognitive/ emotional/expressive language limitations." (Tr. 21). The ALJ considered multiple exam visits from primary care with several exams of no weakness and other exams of varying degrees of left-sided weakness. (Tr. 21). Plaintiff was recommended for speech language services by a speech language

pathologist. (Tr. 21). In July 2020, Plaintiff went to the emergency room with slow speech, 5/5 strength and MRI was unchanged; Plaintiff was discharged the next day. (Tr. 21-22). Plaintiff was seen by her neurologist Dr. Skinner in August 2020 who noted Plaintiff's speech was "essentially resolved." Upon exam, Plaintiff had normal memory, concentration, attention, and fund of knowledge. Plaintiff had slightly unsteady stance/gait. (Tr. 22). Dr. Skinner noted Plaintiff had continued to smoke and had not followed up with cardiology. (Tr. 22). After discussing the record with specific citations, the ALJ then concluded before weighing opinions:

> While the medical evidence demonstrates a basis for the claimant's symptoms, the significant degree of limitations alleged by the claimant are not supported by the findings of record. At the time of her stroke in March 2018, the only deficit the claimant had was expressive aphasia with the subsequent primary care follow-up noting no weakness in her arms or legs (Ex. 1F/31, 2F/7). During the neurological examination with Dr. Jones it appeared to Dr. Jones that the claimant realized she was speaking faster than she had been and her last two calculations, she spoke them slowly with some hesitancy (Ex. 5F). Dr. Jones was suspicious that her speech may not be as interrupted, and she claims it is (Ex. 5F). By August 2020, her treating neurologist notes her speech is "essentially resolved" (Ex. 12F/29), while a Cooperative Disability Investigation shows that a number of people with interaction with the claimant stated she did not have a speech problem (Ex. 11F). Furthermore, following the July 2020 hospitalization for observation the claimant indicated she had to use a walker for several weeks afterward due to left sided weakness (Ex. 12F/29). However, both the hospital neurological examination and the follow-up examination with Dr. Skinner were normal and did not indicate such weakness or the necessity of a walker (Ex. 12F/28-29, 14F/23). The undersigned further notes the claimant's noncompliance with her medications as noted in the record and her misreporting of this further indicates inconsistencies in the claimant's allegations relevant to the issue of disability (Ex. 5F).

(Tr. 22).

The ALJ performed the subjective symptom evaluation appropriately considering whether statements about symptoms were inconsistent with the objective medical evidence and other evidence, and if they are inconsistent, such statements are less likely to reduce capacity to perform work related activities. SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c).

As displayed above, the ALJ fully analyzed Plaintiff's subjective complaints. The ALJ supported his finding–that Plaintiff's intensity, persistence, and limiting effects from Plaintiff's symptoms were not entirely consistent with the record–with citation to substantial evidence. *See also Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1999)("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). A claimant's allegations alone can never establish that she is disabled. 20 C.F.R. § 404.1529. An ALJ can discount a Plaintiff's subjective complaints when they are unsupported by the record. 20 C.F.R. § 404.1529; *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996). Plaintiff is not required to be without symptoms to be found not disabled by the ALJ. Even where there is conflicting evidence that might have resulted in a contrary decision, our review is limited to whether substantial evidence supports the ALJ's decision. Based on the evidence before the ALJ, the ALJ conducted a proper evaluation of subjective symptoms and cited substantial evidence to support the finding that Plaintiff's allegations of disabling symptoms were not consistent with the record.

**RFC/VE**

Plaintiff argues the ALJ erred in not finding Plaintiff disabled based on VE testimony; however, the relevant issue argued is whether the ALJ's RFC should have included a limitation of 20 percent off task per workday and absent three days of work per month.

An ALJ has no obligation to use all of the hypotheticals presented to a VE. *Koonce v. Apfel*, 166 F.3d 1209, *5 (4th Cir. 1999)(Table)(ALJ has "great latitude in posing hypothetical questions"). No provider opined limitations of 20 percent off task per work day or three absences a month, nor is there record evidence supporting such further RFC limitations.

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 416.946(c).

In making that assessment, he must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Additionally, " 'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.' " *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

As discussed above, the ALJ considered Plaintiff's subjective allegations and the evidence of record. To the extent Plaintiff argues Dr. Ritterspach supports an off task limitation and an absences limitation by Dr. Ritterspach stating Plaintiff would have moderate/significant difficulty sustaining focus and had significant impaired pace of task completion due to "cognitive/emotion/expressive language limitations," the ALJ found the opinion unpersuasive because there was clear indication of malingering and improvements once medicated for depressive symptoms. (Tr. 23). Further, the ALJ provided additional reasoning as to the RFC in concluding that Plaintiff's stroke did result in no fast paced production environment, simple, routine, repetitive tasks, and never performing work with more than occasional short communications with the public provided for her speech issues which were noted

to have essentially resolved:

> Although the clinical picture does not fully support the claimant's assertions, the undersigned has accounted for the possible residual symptoms related to the claimant's CVA to the extent allowed by the evidence. Evidence that reasonably supports limiting the claimant to light exertional work with occasional balancing, stooping, and climbing of ramps and stairs, but no kneeling, crouching, crawling, or climbing ladders rope or scaffolds, as well as avoidance of all exposure to dangerous machinery and heights. These limitations fully accommodate the neurological deficits noted by the hospital neurologist in July 2020 and the claimant's treating neurologists, Dr. Skinner, and the extent of the claimant's subjective complaints supported by these records. Likewise, work requiring more than occasional short communications with the public provides for her expressive aphasia which is noted to have "essentially resolved" as of August 2020. Lastly, she is further limited to occupations requiring no more than simple routine repetitive task, not performed in a fast-paced production environment, involving only simple work related instructions and decisions, and requiring relatively few work place changes, which fully accommodate neurocognitive deficits allowed by the overall record. Thus, the residual functioning capacity is consistent with the diagnostic and clinical findings of record, and adequately addresses the location, duration, frequency, and intensity of the claimant's symptoms and precipitating and aggravating factors.

(Tr. 23).

In formulating the RFC, the ALJ considered Plaintiff's allegations, subjective reports, objective evidence, and opinions. (Tr. 19-23). The ALJ supported the functional limitations found in the ALJ's RFC determination with discussion and citation to substantial evidence in the record. Even where there is conflicting evidence that might have resulted in a contrary decision, our review is limited to whether substantial evidence supports the ALJ's decision. An RFC is "an administrative assessment made by the Commissioner based on all the relevant evidence in the case record." *Felton-Miller v. Astrue*, 459 Fed. Appx. 226, 230-31 (4th Cir. 2011) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)). Based upon the foregoing, substantial evidence supports the ALJ's RFC and Plaintiff's arguments regarding two additional limitations do not support a remand.

### III. CONCLUSION

This court is charged with reviewing the case only to determine whether the findings of the

Commissioner were based on substantial evidence. *Richardson*, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, and pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is AFFIRMED.

|  |  |
|---|---|
| November 28, 2022<br>Florence, South Carolina | s/ Thomas E. Rogers, III<br>Thomas E. Rogers, III<br>United States Magistrate Judge |